UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| **TARA J. GONZALES,** § | |
| *Plaintiff,* § | |
| v. § | |
| § | MO:23-CV-00020-DC-RCG |
| **ODESSA COLLEGE AND DR.** § | |
| **GREGORY D. WILLIAMS,** § | |
| *Defendants.* § | |
| § | |

## REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

BEFORE THE COURT is Defendant Odessa College's ("Defendant") Motion to Dismiss. (Doc. 12). This case is before the undersigned through an Order pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**. (Doc. 12).

### I.   BACKGROUND

On January 27, 2023, Plaintiff Tara J. Gonzales ("Plaintiff") filed her Original Complaint against Defendants Odessa College and Gregory D. Williams (collectively, "Defendants") alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, and § 1981 of the Civil Rights Act of 1966 ("§ 1981"), made actionable through the Civil Rights Act of 1871, 42 U.S.C. § 1983. (*See* Doc. 1). Specifically, Plaintiff's causes of action include: 1) race/national origin discrimination in violation of Title VII; 2) race/ethnicity discrimination and retaliation in violation of § 1981; 3) sexual orientation discrimination in violation of Title VII; and 4) retaliation based on sex in violation of Title VII. *Id.* Additionally, Plaintiff alleges, in the alternative, that Defendants discriminated against Plaintiff on the basis of the combination of two or more protected traits. *Id.* at 9. Defendant Odessa College is a public

junior college. *Id.* at 2. Defendant Williams, who is sued in his individual and official capacity, is the President of Odessa College. *Id.* at 1.

According to the Complaint, "Plaintiff is a Hispanic woman of mixed-race descent who is bisexual." (Doc. 1 at 3). She was hired by Defendant in September 2019 as a full-time Instructor of Psychology on a prorated nine-month faculty contract. *Id.* Plaintiff's contract, which stated "that Plaintiff can only be terminated for good cause and/or in accordance with Board Policy," was renewed for 2020-2021. *Id.*

On or around August 23, 2021, one of Plaintiff's scheduled classes was reassigned to a non-Hispanic, straight faculty member without notice. *Id.* According to the Complaint, Plaintiff began to suffer a hostile work environment once Tonia Compton became Chair of the Department of Social and Behavioral Sciences. *Id.* at 4. For example, Plaintiff is allegedly not consulted about her upcoming Spring schedule and begins to receive progressive discipline forms from Dean Pervis Evans. (Doc. 1 at 4). On November 10, 2021, Plaintiff receives three progressive discipline forms, all of which she claims are "trivial and/or bogus." *Id.* Shortly thereafter, Plaintiff makes a complaint to Human Resources ("HR") on November 11, 2021. *Id.* at 5. The following day, Plaintiff is allegedly subjected to verbally aggressive behavior from HR Manager Lindsay Bryant and is informed of "another write-up." *Id.* That same day, November 12, 2021, Plaintiff is suspended. *Id.* On November 17, 2021, the HR Department completes its investigation, finding no discrimination. (Doc. 1 at 5). Plaintiff also receives a final "write-up" and Defendant gives Plaintiff notice of intent to terminate her contract mid-term. *Id.*

On November 23, 2021, Plaintiff files an "Unresolved Grievance Form" claiming that she was targeted due to her ethnic minority status. *Id.* at 6. Defendant acknowledges Plaintiff's appeal on November 29, 2021, and sets an appeal hearing for December 8, 2021. *Id.* Plaintiff

2

then requested that the hearing date be moved, as she could not reasonably obtain legal counsel in less than ten business days; this request was denied, and Defendant proceeded to terminate Plaintiff's contract on December 8, 2021. *Id.* Regarding Defendant Williams, Plaintiff alleges that he "participate[d] in and approve[d] this process." (Doc. 1 at 6).

On March 28, 2023, Defendant filed the instant Motion to Dismiss. (Doc. 12). After receiving an extension of her deadline to file a response until April 25, 2023, Plaintiff filed her Response one day late on April 26, 2023.[1] (Doc. 16). Defendant also received an extension on its deadline to file a reply until May 12, 2023, and filed its Reply on May 10, 2023. (Doc. 21). Consequently, this matter is ripe for disposition.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." When considering a Rule 12(b)(6) motion to dismiss, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). Federal Rule of Civil Procedure 8 requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss. *See Twombly*, 550 U.S. at 555–56. However, a plaintiff must do more than recite the formulaic elements of a cause of action. *See id*. at 556–57. Additionally, the Court is

---

[1] Despite being untimely, the Court will consider Plaintiff's Response in the interest of justice.

not bound to accept as true a legal conclusion couched as a factual allegation in the complaint. *See Iqbal*, 556 U.S. at 678. Thus, although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).

### III. DISCUSSION

#### A. Plaintiff's Municipal Liability Claim

Defendant first argues that Plaintiff failed to identify or allege facts establishing § 1981 claims against it because she did not properly plead that Defendant used an official policy, custom, or practice which was the moving force behind the alleged violations. (Doc. 12 at 3–8). Conversely, Plaintiff argues she adequately stated a claim against Defendant for violations of § 1981. (Doc. 16 at 3–6).

> Section 1981 prohibits employment discrimination on the basis of race, stating:
>
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of the persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). Section 1981 "relates primarily to racial discrimination in the making and enforcement of contracts." *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 459 (1975). To make and enforce a contract includes "the making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

Importantly, and as both parties acknowledge, "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733

(1989). "Section 1983 does not create any substantive rights, but instead was designed to provide a remedy for violations of statutory and constitutional rights." *Lafleur v. Tex. Dept. of Health*, 126 F.3d 758, 759 (5th Cir. 1997) (citing *Jackson v. City of Atlanta*, 73 F.3d 60, 63 (5th Cir. 1996), *cert. denied*, 519 U.S. 818 (1996)). Thus, to state a § 1983 claim, a plaintiff must allege: 1) he or she suffered a deprivation of a right secured by the Constitution and laws of the United States; and 2) a person acting under color of state law committed the alleged deprivation. *West v. Atkins*, 487 U.S. 42, 48 (1988). Further, "[c]laims under § 1983 may be brought against persons in their individual or official capacity, or against a governmental entity." *Goodman v. Harris Cnty.*, 571 F.3d 388, 394–95 (5th Cir. 2009).

When bringing a § 1983 claim against a municipality, the plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury," *Goodman*, 571 F.3d at 395, and show that the municipality made "a deliberate choice to follow a course of action . . . from among various alternatives by city policymakers." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (internal quotations and alterations omitted). Therefore, to prevail on such a cause of action, commonly referred to as a *Monell* claim, a plaintiff must allege: "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Bous v. McAfee*, No. 1:22-CV-0702-LY, 2023 WL 376997, at *4 (W.D. Tex. Jan. 24, 2023), *report and recommendation pending* (citing *Pena v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018)). First, the plaintiff may demonstrate the existence of an official policy "through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority" or by showing the existence of a "persistent, widespread practice." *Sanchez v. Gomez*, 283 F. Supp. 3d 524, 533–34 (W.D. Tex. Oct. 6, 2017) (quoting *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th

Cir. 2010); *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)). The second element requires that a plaintiff allege "[a]ctual or constructive knowledge of [a] custom [that is] attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *Valle*, 613 F.3d at 542. Lastly, "a plaintiff must allege '"moving force" causation,'" which requires the plaintiff to show "that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Sanchez*, 283 F. Supp. 3d at 534 (quoting *Valle*, 613 F.3d at 542).

Here, Plaintiff makes no mention of any policy, custom, or practice whatsoever other than the vague assertion that Plaintiff opposed Defendant's allegedly discriminatory practices. (*See* Doc. 1 at 7). Rather, her claims are limited to allegations that Defendant violated *her individual rights* based on her race and/or ethnicity. *Id.* Plaintiff has alleged no facts suggesting the existence of an actual policy or any persistent, widespread practice of discrimination against employees based on race and/or ethnicity. Thus, viewed in the light most favorable to Plaintiff, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss be **GRANTED** as to Plaintiff's municipal liability claims. (Doc. 12).

B. **Plaintiff's Title VII Claims**[2]

Next, Defendant argues Plaintiff's Title VII claims fail because she failed to sufficiently plead facts establishing: 1) "her race/national origin or sexual orientation were used as a factor with respect to the employment decision"; 2) she was subject to less favorable treatment due to her race/national origin or sexual orientation; and 3) "individuals outside Plaintiff's protected

---

[2] The Court notes Defendant's Motion to Dismiss, while acknowledging Plaintiff's Title VII retaliation claim, does not argue for dismissal of said claim. (*See* Doc. 12 at 3). Instead, Defendant appears to argue for dismissal of Plaintiff's Title VII discrimination claim only. *Id.* at 8. Therefore, the Court will not address the sufficiency of Plaintiff's pleadings as to her Title VII retaliation claim at this time.

class who were similarly situated to Plaintiff received more favorable treatment than Plaintiff under nearly identical circumstances." *Id.* at 8, 9. Plaintiff asserts she is not required to plead facts alleging she was treated less favorably than others similarly situated outside the protected class under nearly identical circumstances and that she has sufficiently alleged a claim for Title VII violations. *Id.* at 6–8. Lastly, Plaintiff requests that, should the undersigned find her pleadings insufficient, she be given leave to amend. *Id.* at 8.

Pursuant to § 2000e-2(a)(1), "[i]t shall be an unlawful employment practice for an employer—(1) . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Disparate-treatment discrimination occurs when an employee is subject to "employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin." *Johnson v. Fed. Info. Sys., Inc.*, SA-22-CV-00796-XR, 2022 WL 4298458, at *5 (W.D. Tex. Sept. 16, 2022).

Typically, when alleging a disparate-treatment case based on circumstantial evidence, "a court analyzes the plaintiff's claim under the *McDonnell Douglas* framework."[3] *Id.* (citing *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). However, "a plaintiff need not make out a prima facie case of discrimination [under *McDonnell Douglas*] in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Id.* (quoting *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)). Rather, a plaintiff must plead "(1) an 'adverse employment action,' (2) taken against a plaintiff '*because of* her protected status.'" *Id.* at *6 (quoting *Raj*, 714

---

[3] To establish a *prima facie* case of discrimination under the *McDonnell Douglas* framework, a plaintiff must provide evidence that he or she "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group." *Morris v. Town of Indep.*, 827 F.3d 396, 400 (5th Cir. 2016).

F.3d at 331). While "it can be 'helpful to reference' [the *McDonnell Douglas*] framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of the disparate treatment claim," *Id.* (quoting *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019)), "courts must not inappropriately heighten the pleading standard in Title VII cases by 'subjecting plaintiff's allegations to a rigorous factual or evidentiary analysis under the *McDonnell Douglas* framework in response to a motion to dismiss.'" *Johnson*, 2022 WL 4298458, at *6 (quoting *Cicalese*, 924 F.3d at 767).

Here, Plaintiff stated she is a member of two protected classes: her sex (female) and race (Hispanic). (Doc. 1 at 6, 8). She also alleged that she suffered an adverse employment action, as she was allegedly terminated due to her race/national origin and/or her sex and/or her sexual orientation. *Id.*; *see Peterson v. Linear Controls, Inc.*, 757 F. App'x 370, 373 (5th Cir. 2019) ("strictly constru[ing] adverse employment actions to include only 'ultimate employment decisions,' such as 'hiring, granting leave, discharging, promoting, or compensating'"). Further, Plaintiff stated that, on August 23, 2021, she was replaced by a non-Hispanic, straight faculty member for one of her scheduled classes, despite being "an educator, trainer, mentor, and Certified Life Coach who obtained a master's degree in Clinical Psychology from the University of Texas Permian Basin." (Doc. 1 at 3). Additionally, despite never receiving complaints prior to June 2021, Plaintiff allegedly received four disciplinary-related complaints in November 2021 for behavior which other professors, who were not members of her same protected classes, were not disciplined for. *Id.* at 5. Thus, viewed in the light most favorable to Plaintiff, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss be **DENIED** as to Plaintiff's Title VII claims. (Doc. 12).

IV. **RECOMMENDATION**

Case 7:23-cv-00020-DC-RCG   Document 23   Filed 07/06/23   Page 9 of 10

Based on the circumstances present in this case, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**. (Doc. 12). Specifically, the undersigned **RECOMMENDS** Defendant Odessa College's Motion to Dismiss be **GRANTED** as to Plaintiff's § 1981 municipal liability claim, made actionable pursuant to § 1983. Regarding Plaintiff's Title VII claims, the undersigned **RECOMMENDS** Defendant's Motion be **DENIED**. As noted earlier, because Defendant's Motion to Dismiss does not make arguments as to Plaintiff's Title VII retaliation claims, that claim survives. Lastly, the undersigned **RECOMMENDS** that Plaintiff's request for leave to amend her Complaint be **GRANTED**.

SIGNED this 6th day of July, 2023.

_____
RONALD C. GRIFFIN
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

In the event that a party ***has not been served*** by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).